## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ELBERT MISNER** | § | |
| | § | |
| **Petitioner** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **NATHANIEL QUARTERMAN,** | § | **Civil No. SA 07 CA 0177 XR** |
| **Director, Texas Department of** | § | |
| **Criminal Justice - Correctional** | § | |
| **Institutions Division** | § | |
| | § | |
| **Respondent** | § | |
| | § | |

## ORDER ACCEPTING UNITED STATES MAGISTRATE JUDGE'S
## MEMORANDUM AND RECOMMENDATION

Petitioner Elbert Misner has filed an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his State court conviction for possession with intent to deliver a controlled substance. Petitioner alleges (1) he was denied a fair trial, (2) the prosecution failed to prove the elements of the offense beyond a reasonable doubt, (3) he received ineffective assistance of counsel at trial, (4) he received ineffective assistance of counsel on appeal, and (5) prosecutorial misconduct.

On this date the Court considered the United States Magistrate Judge's Memorandum and Recommendation in the above-numbered and styled case, filed August 16, 2007, and the Petitioner's objections to the Magistrate Judge's recommendation. After careful consideration, the Court accepts the recommendation and dismisses the case.

## I. BACKGROUND

Petitioner was found guilty by a jury in the 399th Judicial District Court of Bexar County, Texas, cause no. 2002-CR-5726A, of possession with intent to deliver more than four grams of heroin.  On April 21, 2003, he was sentenced as an habitual offender to serve life in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID").  His conviction was affirmed by the Texas Fourth Court of Appeals on April 7, 2004.  The Texas Court of Criminal Appeals denied his petition for discretionary review on September 29, 2004.  On April 25, 2005, Petitioner filed a State habeas application under Article 11.07 of the Texas Code of Criminal Procedure.  The Texas Court of Criminal Appeals denied the application on December 13, 2006. This Federal habeas application was filed on February 14, 2007.

The facts of his case are set out in the opinion of the Texas Fourth Court of Appeals:

Detective Richard Funk was contacted by a paid confidential informant involving drug trafficking.  The informant had a criminal history involving narcotics and was considered reliable.  The informant previously had been paid for providing information.

The confidential informant provided Misner's name to Detective Funk.  Based on the information he provided, Detective Funk called five or six other detectives and established a surveillance at the location where Misner lived.  The detectives waited for a particular vehicle to arrive.  When the vehicle arrived, the detectives converged and surrounded the vehicle with their cars.  Misner was the passenger in the vehicle, which was driven by Roy Spears.  The detectives identified themselves, and Detective Funk handcuffed Misner, who was standing at the back of the vehicle. Detective Durden handcuffed Spears, and pointed to the heroin that Detective Durden saw Misner drop on the ground.  The heroin was packaged in two containers: a prescription pill bottle containing Spear's name and a sandwich-type bag.  Pictures of the two containers at the location where they were dropped were introduced into evidence.  Detective Funk stated that Spears was detained at the driver's side of the vehicle and was never close to the back of the vehicle where Misner dropped the heroin.  Detective Funk testified that Spears could not have thrown the heroin to the location because it would have hit him first and Spears never reached under the vehicle.

Detective Funk testified that the amount of heroin was more than a user would

generally carry or use. Detective Funk stated that he had worked hundreds of drug cases, and the amount of heroin was almost double what a heroin addict would use in one day. Detective Funk testified that the amount of heroin was more consistent with a person who intended to package and sell the drug.

Detective Durden assisted Detective Funk with the surveillance. When Detective Funk called the detectives, Detective Durden drove forward and positioned his car to block any type of escape. As he arrived, Misner had exited the passenger side of the car and was starting to walk to the back of the car. Detective Durden identified himself and started heading toward Misner. At that time, Detective Funk had arrived and had come around to take custody of Misner. As Misner approached the back corner of the vehicle, Detective Durden saw Misner make a "throw-down motion" and heard something hit the ground. Detective Durden passed Detective Funk and handcuffed Spears. Detective Durden stated that if Spears had attempted to throw something underneath the car, he would have heard a different sound. Detective Durden further testified that he did not believe Spears could have thrown a plastic bag as far back as the bag containing the heroin was found because the weight of the bad would not have carried it that far. Detective Durden photographed the containers and collected the evidence. Detective Durden believed that the amount of heroin was enough for distribution. The field-test results revealed that the prescription bottle contained 1.3 grams of heroin, and the plastic bag contained 5.6 grams of heroin. Detective Durden stated that a chemist's weighing of the heroin would differ from the field test because the field test weighs the heroin in plastic bags.

Mark Florence, a forensic scientist with the Bexar County Forensics Science Crime Lab, tested the contents of the plastic bag which he determined contained over 4 grams of heroin.

Misner testified that Spears was driving Misner's car because Misner did not like to drive at night. Misner had accompanied Spears to pick up some money. Misner testified that when they exited the car, the detectives pulled up and told them to freeze. Misner threw his cigarette down and put up his hands. Misner denied seeing Spears in possession of the pill bottle or the plastic bag. Misner also denied being in possession of the heroin. Misner stated that a street cleaner was going by the front of the house at the time he was arrested. On cross-examination, Misner admitted that he was previously convicted of burglary with intent to commit theft on November 7, 1955, assault with intent to rob on November 7, 1955, burglary with intent to commit theft on February 22, 1962, burglary with intent to commit theft on November 5, 1973, passing as true a forged instrument in three separate causes on November 5, 1973, theft of property of the value of over $200 and less than $10,000 on June 6, 1979, and theft between $200 and $7590 on October 21, 1993.

## II.  STANDARD OF REVIEW

When a party objects to the Magistrate Judge's Memorandum and Recommendation, the Court is required to conduct a de novo review.[1]  In a de novo review, the Court will examine the entire record and will make an independent assessment of the law.  The Court need not, however, conduct a de novo review when the objections are frivolous, conclusive, or general in nature.[2]  In this case, Petitioner objected to portions of the Magistrate Judge's report and recommendation; therefore, this Court will conduct a de novo review of those portions.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a State prisoner may not obtain relief with respect to a claim adjudicated on the merits in State court unless the adjudication (1) resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal law, as announced by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.[3]  A decision is contrary to clearly established Federal law if the State court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the State court decides a case differently than the Supreme Court on a set of materially indistinguishable facts.[4]  A State court decision involves an unreasonable application of clearly established precedent if the State court applies Supreme Court precedents to the facts in an objectively unreasonable manner.[5]

---

[1] *Velasquez v. Woods*, 329 F.3d 420, 421 (5th Cir. 2003).

[2] *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

[3] 28 U.S.C. § 2254(d).

[4] *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

[5] *Brown v. Payton*, 544 U.S. 133, 141 (2005).

A Federal court's focus on the unreasonable application test under Section 2254(d) should be on the ultimate legal conclusion that the State court reached and not on whether the State court considered and discussed every angle of the evidence.[6]  Specifically, AEDPA has "modified a [F]ederal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law."[7]  In review of a State prisoner's Federal habeas petition, a determination of a factual issue made by a State court shall be presumed to be correct, and the petitioner shall have the burden of rebutting the presumption by clear and convincing evidence.[8]

## III.  ANALYSIS OF PETITIONER'S OBJECTIONS

On September 7, 2007, Petitioner filed a list of Objections to the Magistrate Judge's Memorandum and Recommendation.  These 18 objections can be organized into the following groups: (1) procedural objections; (2) Petitioner was denied a fair trial; (3) Petitioner received ineffective assistance of counsel at trial; and (4) prosecutorial misconduct.  The Court will review these objections individually, as organized in these groups below.

### A.  Procedural Objections

Petitioner offers four objections alleging improper procedure by the trial court as well as the Magistrate Judge.  Each is addressed below.

#### 1.  Objection #1

Petitioner argues that the Magistrate Judge failed to conduct a "Proposed Findings of Fact"

---

[6] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc).

[7] *Bell v. Cone*, 535 U.S. 685, 693 (2002).

[8] 28 U.S.C. § 2254(e)(1).

as required under Federal Rules of Civil Procedure ("FRCP") 72(b)(1).[9]  Specifically, Petitioner

argues that the Magistrate Judge failed to address the fact that Respondent, in his Answer to the

Petitioner's habeas petition, incorrectly referred to Petitioner by the names "Payne" and "Lewis."[10]

Petitioner claims that these apparent errors by Respondent prove that these documents are not

entitled to a "Presumption of Correctness."

In review of a State prisoner's Federal habeas petition, factual determinations and other

unarticulated findings made by a State court shall be presumed to be correct.[11]  The applicant has the

burden of rebutting the presumption of correctness by clear and convincing evidence.[12]  The statute

does not mention that documents filed by Respondent are presumed to be correct.  Furthermore, the

Advisory Committee Notes to FRCP 72(b)(1) specifically state that "this rule does not extend to

habeas corpus petitions."[13]  Therefore, Petitioner's first objection fails.

### 2.  *Objection #2*

Petitioner's second objection is that he was unlawfully not served with copies of his appellate

and State habeas records when Respondent filed them with the Court on April 12, 2007 and May 18,

---

[9] Docket No. 21 at 1; Fed. R. Civ. P. 72(b)(1) states: "A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense or a prisoner petition challenging the conditions of confinement.  A record must be made of all evidentiary proceedings and may, at the magistrate judge's discretion, be made of any other proceedings.  The magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact.  The clerk must promptly mail a copy to each party."

[10] Docket No. 11 at 1, 5.

[11] *See* 28 U.S.C. § 2254(e)(1); *Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001).

[12] 28 U.S.C. § 2254(e)(1).

[13] Fed. R. Civ. P. 72(b) (Notes of Advisory Committee).

2007.[14]  According to the Supreme Court, neither the Fifth Amendment's Due Process and Equal Protection Clauses nor the habeas corpus provision in Article I, §1, cl. 2 of the Constitution entitle prisoners to receive a free copy of court records.[15]  Therefore, Petitioner's second objection fails.

### 3.  Objection #3

Petitioner argues that the Magistrate Judge improperly relied on the opinion of the State appellate court, including that court's factual descriptions, for Petitioner's history and background.[16] Petitioner objects to the use of the appellate court opinion as he did not introduce the document and he argues that due to the appellate nature of the document it is irrelevant.

As previously stated, in review of a State prisoner's Federal habeas petition, factual determinations and other unarticulated findings made by a State court shall be presumed to be correct.[17]  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.[18]  Petitioner has not rebutted the presumption of correctness of the State appellate court record with any evidence.  Therefore, Petitioner's third objection fails.

### 4.  Objection #4

Petitioner argues that Respondent failed to request the Court to take judicial notice of the State court's appellate records and that the appellate court opinion is not subject to review by the Court.[19]

---

[14] Docket No. 21 at 1-2.

[15] *United States v. MacCollum*, 426 U.S. 317 (1976).

[16] Docket No. 21 at 2.

[17] *See* 28 U.S.C. § 2254(e)(1).

[18] *Id.*

[19] Docket No. 21 at 2.

Judicial notice of the appellate records is not required in this case.  Judicial notice is a mechanism by which a trial court accepts, without proof, a well-known and indisputable fact.[20] Furthermore, a copy of the official records of the State court are admissible in a Federal court habeas corpus proceeding.[21]  Therefore, the State appellate court's records were properly before this Court, and Petitioner's fourth objection fails.

## B.  Fair Trial

In his petition for a writ of habeas corpus, Petitioner argues that he was denied a fair trial because the prosecution discussed with the jury panel different ranges of possible punishments based on whether a defendant is a repeat offender, thus suggesting to the jury that Petitioner had prior convictions.  This issue was raised in Petitioner's State habeas petition and the State habeas courts found that the venire panel had been rehabilitated, and that the selected jurors stated that they could be fair and impartial.  Thus, the State courts concluded that Petitioner had failed to state facts showing that he had been denied a fair trial.

Prior to trial, Petitioner's attorney, Michael Raign ("Raign"), filed a motion in limine, to preclude the State from referring to extraneous bad acts committed by Petitioner.  In arguing the motion to the Court, Raign noted that because his client was charged as an habitual offender, the State was permitted to question the jury on different ranges of punishment applicable depending upon facts and circumstances which may be proven at trial.[22]  However, he did not want the

---

[20] Fed. R. Evid. 201.

[21] 28 U.S.C. § 2254(g).

[22] Reporter's Record, Vol. 2 of 7, pp. 5-6.

prosecution to make any reference to Petitioner's prior convictions.[23]  The Court and parties agreed that this was an appropriate resolution of the motion.

During voir dire, the prosecutor began explaining to the jury panel the penalty for a person convicted of the offense with which Petitioner was charged.[24]  The prosecutor then attempted to state what the penalty would be if a person who was convicted of that crime had previously been convicted of another felony.[25]  Raign objected that the prosecutor had misstated the law concerning the range of punishments.[26]  The prosecutor's attempts to clarify were met with similar objections and references to the motion in limine.[27]  The Court then recessed for lunch.

When the trial resumed, venireperson no. 6, an attorney, asked to speak with the trial judge outside the presence of the remaining panel, and advised the judge that it was his impression, based on the prosecutor's statements, that Petitioner had previously been convicted.[28]  Raign renewed his objection to making reference to Petitioner's prior convictions and requested a mistrial; however, the motion was denied.[29]  During his questioning of the jury panel, Raign stated he did not wish to discuss the matter of Petitioner's prior convictions, but felt compelled to do so after the prosecutor's discussion.[30]

_____

[23] *Id.*

[24] Reporter's Record, Vol. 3 of 7, pp. 36-37.

[25] *Id.* at 37.

[26] *Id.*

[27] *Id.*

[28] *Id.* at 39-41.

[29] *Id.* at 41.

[30] *Id.* at 51-52.

Raign questioned the jury panel to determine if it was left with the impression that Petitioner had prior convictions based on the prosecutor's discussion.[31]  Venirepersons no. 2, 3, 8, 12, 16, 17, 18, 25, 28, 32, 34, 37, 44, 46, 47, 48, and 49 indicated that they were left with an impression and it was a negative one.[32]  Venirepersons nos. 6 and 18 were stricken by agreement and venireperson no. 16 was stricken for cause.[33]  The remaining venirepersons were individually questioned about their impression of Petitioner having been previously convicted.[34]  Each indicated that despite that knowledge, he or she could be fair and give Petitioner a fair trial.[35]  From these venirepersons, only nos. 3, 8, and 17 actually were selected to serve on the jury.[36]

In support of his argument that he was denied a fair trial, Petitioner offers six objections to the Magistrate Judge's Report and Recommendation.  Each is addressed below.

### 1.  Objection #5

In Petitioner's fifth objection to the Magistrate Judge's Memorandum and Recommendation, he argues that his application for writ of habeas corpus should be granted under 28 U.S.C. § 2254(d)(1) because the adjudication of the claim in State court resulted in a decision that was contrary to established Federal law, as determined by the Supreme Court.[37]  Specifically, he argues

---

[31] *Id*. at 52.

[32] *Id.*

[33] *Id.* at 170, 188.

[34]  *Id.* at 115-16, 127-128, 130, 137, 143, 150, 151-52, 160, 165-66, 190.

[35] *Id.*

[36] *Id.* at 193-194.

[37] *See* 28 U.S.C. § 2254(d)(1).

that the Supreme Court's decision in *Morgan v. Illinois* controls.[38]  In *Morgan*, the Court held that a capital defendant facing the death penalty may challenge for cause a prospective juror who would automatically vote to impose the death penalty in every case.[39]  *Morgan* only applies, however, to capital defendants facing the possibility of the death penalty and their prospective jurors who maintain pre-determined views on imposing the death penalty.[40]  As this is not a death penalty case, Petitioner's fifth objection fails.

### 2.  Objection #6

Petitioner objects to the Magistrate Judge's Memorandum and Recommendation again based on the claim that he was denied a fair trial when the State questioned the jury panel about the different ranges of punishment available depending on whether Petitioner was a repeat offender.[41]  Petitioner argues that the State court's decision was contrary to clearly-established Federal law as stated in *Morgan*, that the State did not rehabilitate the venire members, and that it was "manifest error" to allow jury members to allow the venirepersons to sit on the jury.  As detailed above, Petitioner's argument that *Morgan* controls fails.[42]

The Constitution guarantees a fair trial through the Due Process Clause of the Fourteenth Amendment.[43]  The Sixth Amendment assures that a defendant enjoys a trial by an impartial jury.[44]

---

[38] Docket No. 21 at 2-3.

[39] *Morgan v. Illinois*, 504 U.S. 719, 729 (1992).

[40] *See id.*

[41] Docket No. 21 at 3.

[42] See analysis under *Objection #5*.

[43] U.S. Const. amend. XIV.

[44] U.S. Const. amend. XI.

However, a trial court's findings of juror impartiality may "be overturned only for 'manifest error.'"[45] Under the constitutional standard, the relevant question is not what the jury knows, but whether they have such fixed opinions that they could not judge impartially the guilt of the defendant.[46] Moreover, voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges.[47]

Voir dire was properly utilized in this case for its intended purposes.  The venire members who indicated affirmatively that the prosecutor's discussion had given them the impression that Petitioner had previously been convicted were each individually questioned.  All of them, including the three who ultimately served on the jury, indicated that, despite that impression, they could give Petitioner a fair trial.  The State habeas courts found that the venire panel had been rehabilitated and that the selected jurors stated that they could be fair and impartial.  Such a determination of a factual issue made by a State court shall be presumed to be correct and can only be rebutted by clear and convincing evidence, which Petitioner bore the burden of presenting.[48]  Petitioner has not satisfied this burden.  Instead he simply restates his argument that the individual jurors could not be fair to him.

Also, in Petitioner's sixth objection, he argues that the Supreme Court decision in *Old Chief v. United States* controls.[49]  In *Old Chief*, the Court held that where a prior conviction is an element

---

[45] *Mu'Min v. Virginia*, 500 U.S. 415, 428-29 (1991) (quoting *Patton v. Yount*, 467 U.S. 1025, 1031 (1984) (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961))).

[46] *Mu'Min*, 500 U.S. at 430; *Patton*, 467 U.S. at 1035.

[47] *Mu'Min*, 500 U.S. at 431.

[48] 28 U.S.C. § 2254(e)(1).

[49] Docket No. 21 at 3.

of the crime charged, evidence of a defendant's prior conviction may not be admitted if the defendant is willing to concede to the fact of the conviction.[50] *Old Chief* is not applicable to this case as the prosecution accepted Petitioner's offer to stipulate to his prior convictions, and more importantly, a prior conviction is not an element of the crime for which he was on trial.

Furthermore, Petitioner chose to testify at trial and did in fact testify in detail to three convictions for burglary with intent to commit theft, one conviction for assault with intent to rob, three convictions for passing as true a forged instrument, one conviction for theft of property of the value of over $200 and less than $10,000, and one conviction for theft between $200 and $750.[51] In light of his decision to allow extensive prior criminal history to be placed before the jury during trial, Petitioner has failed to show how he was harmed by the prosecutor's brief discussion of penalty enhancement during voir dire which did not include facts or figures pertaining to prior convictions.

Due to the fact that the State rehabilitated the venire panel members and that Petitioner chose to testify at trial, Petitioner's sixth objection fails.

### 3.  Objection #7

In his seventh objection, Petitioner argues that the trial court did not approve of his stipulation of evidence of his prior convictions.[52] Petitioner again argues that the Supreme Court's holding in *Old Chief* is controlling.  As noted above, *Old Chief* does not apply to this case.[53]  The Court notes that Petitioner freely took the stand in his own defense and admitted to these prior

---

[50] *Old Chief v. United States*, 519 U.S. 172 (1997).

[51] Reporter's Record, Vol. 5 of 7, pp. 71-76.

[52] Docket No. 21 at 3-4.

[53] See analysis under *Objection #6*.

convictions.  Therefore, Petitioner's seventh objection fails.

### 4. Objection #8

In his eighth objection, Petitioner reiterates his argument that the State trial and appellate courts did not apply the correct Federal law according to the Supreme Court decisions in *Morgan* and *Old Chief*.[54]  Based on this, he argues that his application for a writ of habeas corpus should be granted under 28 U.S.C. § 2254(d)(1).  As noted above, *Morgan* and *Old Chief* do not apply to the facts of Petitioner's case.[55]  Therefore, Petitioner's eighth objection fails.

### 5. Objection #9

Petitioner argues, in his ninth objection, that although the Magistrate Judge's Memorandum and Recommendation states that the venire panel had been found to be rehabilitated, the Magistrate Judge failed to indicate where in the record that information is found, and thereby objects to the Memorandum and Recommendation.[56]  The Magistrate Judge details exactly where the jury was rehabilitated by the trial court.[57]  As the Magistrate Judge stated, the remaining venirepersons were individually questioned about their impression of Petitioner having been previously convicted.[58] Each indicated that despite that knowledge, he or she could be fair and give Petitioner a fair trial.[59] Thus, the venire panel was rehabilitated.  Of these remaining venirepersons, only nos. 3, 8, and 17

---

[54] Docket No. 21 at 4.

[55] See analysis under *Objection #5* for *Morgan* and *Objection #6* for *Old Chief*.

[56] Docket No. 21 at 4.

[57] Docket No. 15 at 7.

[58]  Reporter's Record, Vol. 3 of 7 at 115-16, 127-128, 130, 137, 143, 150, 151-52, 160, 165-66, 190.

[59] *Id.*

actually were selected to serve on the jury.[60]   Therefore, Petitioner's ninth objection fails.

### 6.  Objection #10

In his tenth objection, Petitioner argues that he was harmed by the introduction of his prior criminal history during voir dire in that he would not have taken the stand if his prior criminal history had not been introduced at that stage of the trial.[61]   This Court cannot speculate as to Petitioner's decision to serve as a witness.  Furthermore, Petitioner's prior criminal history was not introduced during voir dire, but when Petitioner took the stand.  During voir dire, the State briefly discussed the repeat offender program, but never mentioned the specifics of Petitioner's prior convictions. Therefore, Petitioner's tenth objection fails.

### C.  Ineffective Assistance of Counsel

Petitioner has raised claims that his trial attorney, Mr. Raign, was ineffective.  The Sixth Amendment right to counsel entitles the defendant to a reasonably competent attorney, whose advice is within the range of competence demanded of attorneys in criminal cases.[62]   To obtain habeas relief on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his counsel was deficient and that the deficiency prejudiced his defense.[63]   In order to establish that counsel's performance was constitutionally deficient, a convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance.[64]   Judicial scrutiny of counsel's performance must be highly

---

[60] *Id.* at 193-94.

[61] Docket No. 21 at 4.

[62] *United States v. Cronic*, 466 U.S. 648, 655 (1984).

[63] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[64] *Id.* at 689-91.

deferential and every effort must be made to eliminate the "distorting effect of hindsight."[65]  An error by counsel, even if professionally unreasonable, must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.[66]  The mere possibility of a different outcome is not sufficient to prove prejudice.[67]  The petitioner must prove that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair.[68]  In evaluating a claim of ineffective assistance during the guilt phase of the trial, a petitioner must show a "reasonable probability" that the jury would have otherwise harbored a reasonable doubt concerning guilt.[69]

All of Petitioner's claims of ineffective assistance of counsel were raised and rejected in his State habeas proceedings.  Petitioner's seven objections to the Magistrate Judge's Memorandum and Recommendation concerning Petitioner's claims of deficiency of counsel will be addressed individually below.

### 1.  Objection #11

In his eleventh objection, Petitioner claims that Raign did not provide him with a copy of the indictment until five days before trial, which precluded him from having time to prepare a defense.[70]

---

[65] *Id.* at 689.

[66] *Id.* at 692.

[67] *Johnson v. Cockrell*, 301 F.3d 234, 239 (5th Cir. 2002).

[68] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[69] *United States v. Mullin*, 315 F.3d 449, 456 (5th Cir. 2002).

[70] Docket No. 21 at 5-6.

In his affidavit, which the State habeas court found to be credible,[71] Raign testified that he was unaware that Petitioner did not have a copy of the indictment until shortly before trial.  Further, no later than two months before trial and on several other occasions prior to trial, Raign and Petitioner discussed the indictment.  Petitioner fails to point to any defense he could have presented had he been given a copy of the indictment sooner.  Petitioner has failed to establish either deficient performance or prejudice; therefore, his eleventh objection fails.

## 2.  *Objection #12*

Petitioner objects to the following statement in the Magistrate Judge's Memorandum and Recommendation:  "Even now, Misner produces no proof that he was unrepresented during the prior proceedings."[72]  Petitioner alleges that there were numerous deficiencies with the prior convictions, particularly cause numbers 54350 and 60545, both used to enhance punishment.  Petitioner complains that Raign failed to investigate his prior convictions and specifically, that Raign did not determine if Petitioner was represented by counsel at the punishment phase for these prior convictions.  Raign testified, contrary to Petitioner's claim, that he did investigate the enhancement allegations in the indictment and found no basis to challenge them.  Petitioner points to the Texas State Court Judgment No. 54350 against him for Burglary with Intent to Theft and argues that this document shows he was not represented by legal counsel for that trial.[73]  The Judgment, however, plainly states that Petitioner appeared at the judgement "in person and by attorney."[74]  Therefore,

---

[71] Such credibility determinations by the State habeas court must be afforded deference. *See Coleman v. Quarterman*, 456 F.3d 537, 541 (5th Cir. 2006).

[72] Docket No. 15 at 17.

[73] Docket No. 3 at Appendix G.

[74] *Id.*

Petitioner's twelfth objection fails.

### 3.  Objection #13

Plaintiff objects to the following statement in the Magistrate Judge's Memorandum and Recommendation: "Misner's allegations concerning the admissibility of the stipulation do not state a constitutional claim."   Petitioner complains that Raign erred in having him stipulate to the authenticity and admissibility of various penitentiary packets proving several prior convictions, including cause numbers 54350 and 60545.[75]  By stipulating to admission of the penitentiary packets, Raign hoped to reduce the impact of putting on further evidence concerning Petitioner's convictions. The  State habeas court adopted Raign's explanation.  Such tactical decisions, based on informed and reasoned practical judgment, will not be second-guessed by the Court.[76]  Petitioner has failed to establish either deficient performance or prejudice; therefore, his thirteenth objection fails.

### 4.  Objection #14

Petitioner again alleges that Raign failed to investigate his prior convictions and that Raign did not determine if Petitioner was represented by counsel at the punishment phase for these prior convictions.[77]  Specifically, Petitioner points to Raign's affidavit, in which Raign stated that he investigated Petitioner's criminal history and penitentiary packets on June 17, 2002 and July 16, 2002.  Petitioner argues that this is factually impossible as he was not indicted until September 11, 2002.  Notwithstanding this apparent date error, Petitioner still produces no proof that he was unrepresented during the prior proceedings; therefore, Petitioner's fourteenth objection fails.

---

[75] Docket No. 21 at 7.

[76] *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997).

[77] Docket No. 21 at 8.

### 5.  Objection #15

Petitioner contends that counsel was ineffective for failing to challenge the identity and personal knowledge of the confidential information ("CI") who led police to believe that Petitioner was in possession of heroin.  Further, he contends that Raign failed to determine if the CI was on parole and whether the CI had the Parole Board's permission to act as an informant.[78]  Petitioner objects to the Magistrate Judge's recommendation that neither of these issues has any relevance.[79]

Raign testified that he believed that the search and seizure was lawful, and therefore, there was no legal basis for calling the CI and revealing his identity.   Raign also stated that he believed that the question of whether the CI had been on parole was irrelevant.  The State habeas court adopted Raign's explanation.

The Fourth Amendment permits an investigative stop of a vehicle if officers have a reasonable suspicion the vehicle or its occupants are involved in criminal activity.[80]  The police detectives, based on information provided by the CI, had a reasonable suspicion that Misner and the driver of Misner's car, Roy Spears, were involved in criminal activity.  Furthermore, after the valid stop was made, Petitioner exited the car and discarded the drugs on the ground in plan view of the officers.  Petitioner has failed to establish either deficient performance or prejudice; therefore, his fifteenth objection fails.

### 6.  Objection #16

Petitioner objects to the Magistrate Judge's statement in his Memorandum and

---

[78] *Id.*

[79] Docket No. 15 at 19.

[80] *See United States v. Stevens*, 487 F.3d 232, 244 (5th Cir. 2007); *United States v. Bell*, 480 F.3d 860, 863 (8th Cir. 2007).

Recommendation referring to the police officers' detention of Petitioner as a "stop."[81]  Petitioner claims that the detectives' actions did not constitute a stop, rather that they descended on Petitioner's vehicle after Petitioner arrived at his home.

If there was no stop or detention, as Petitioner claims, then the situation can only be described as an encounter.  Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in a public place without detaining them.[82]  In an encounter, officers may approach a citizen without probable cause or reasonable suspicion to ask questions or even to request a search because the citizen is under no compulsion to remain.[83]  However, the facts show that when Petitioner arrived in his vehicle, the detectives converged and surrounded his vehicle with their cars, preventing escape.

Whether or or not this is considered a "stop", the detectives, based on information provided by the CI, had reasonable suspicion that the vehicle and its occupants were involved in criminal activity.  Thus, their actions were within the purview of the Fourth Amendment.[84]  Petitioner has failed to establish either deficient performance or prejudice; therefore, his sixteenth objection fails.

### 7.  Objection #17

In Petitioner's seventeenth argument (the second #16 in his Objections), he argues that Raign should have discredited Detective Durden when Durden testified as an expert witness concerning his opinion that the quantity of heroin recovered was a distributable amount.[85]  Petitioner claims that

---

[81] *See* Docket No. 15 at 19.

[82] *Florida v. Royer*, 460 U.S. 491, 497-98.

[83] *Id.*

[84] *See Stevens*, 487 F.3d at 244; *Bell*, 480 F.3d at 863.

[85] Docket No. 21 at 9.

Raign failed to hold the State to its burden of qualifying its expert under the factors of the Supreme Court's decision in *Daubert v. Merrell Dow Pharms*.[86]

Raign stated that he was familiar with Detective Durden's experience and found he was sufficiently qualified to testify regarding narcotics transactions and the use of narcotics. Further, Raign believed that an objection would have been frivolous and that he did not want to emphasize Detective Durden's expert status to the jury by making such an objection. The State habeas court adopted Raign's explanation.

As stated previously, such well-informed and reasoned decisions by counsel are entitled to deference.[87] Detective Funk similarly testified that the heroin seized was a distributable amount. There is no reason to believe that any attempt to discredit Detective Durden would have had any meaningful affect on the outcome of the trial. Petitioner has failed to establish either deficient performance or prejudice; therefore, his seventeenth objection fails.

## D. Prosecutorial Misconduct

### 1. Objection #18

Petitioner's final objection (numbered #17 in his Objections) is that the prosecution's introduction of Petitioner's prior criminal history during voir dire constituted prosecutorial misconduct.[88] As previously discussed, the venire members were rehabilitated.[89] Again, in light of Petitioner's decision to allow his extensive prior criminal history to be placed before the jury during

---

[86] *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

[87] *Ransom*, 126 F.3d at 721.

[88] Docket No. 21 at 9.

[89] *See* analysis in *Objection #5* above.

the guilt/innocence phase of the trial, Petitioner has failed to show how he was harmed by the prosecutor's brief discussion of penalty enhancement during voir dire which did not include numbers or nature of prior convictions.   Therefore, Petitioner's eighteenth objection fails.

## IV.  ORDER

The Magistrate Judge's Memorandum and Recommendation is hereby **ACCEPTED** and this case is **DISMISSED**.  The Clerk is instructed to enter Final Judgment on behalf of Respondent.

It is so ORDERED.

SIGNED this 17th day of June, 2008.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE